IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| David N. Firewalker-Fields,<br>    Plaintiff, | )<br>)<br>) |
| v. | )     1:20cv1338 (CMH/IDD) |
| | ) |
| Virginia Department of Corrections, et al.,<br>    Defendants. | )<br>) |

## MEMORANDUM OPINION

This matter is before the Court on a Motion for Summary Judgment ("Motion") [Dkt. No. 27] filed by defendants K. Rosch, J. Adams, A. Wethington, E. Boone, C. Gensinger, D. Stephenson, I. Gilmore, and the Virginia Department of Corrections ("VDOC") (collectively "defendants") in this civil rights action filed under 42 U.S.C. § 1983 by Virginia state prisoner David Nighthorse Firewalker-Fields ("plaintiff"). The Court screened several iterations of complaints in this action and dismissed many claims, leaving only the following issues before the Court: (1) a claim that defendants violated plaintiff's rights by failing to transfer him to a different carceral institution; (2) a claim that defendants violated plaintiff's rights by miscalculating his security level; and (3) a claim that defendants violated plaintiff's rights by failing to provide him a "alert alarm clock," which he requires due to being hard of hearing. [See Dkt. Nos. 14, 15]. In their Motion, defendants argue that they are entitled to judgment with respect to these claims, see [Dkt. No. 28], a position plaintiff opposes, see [Dkt. No. 33]. For the reasons explained below, defendants' Motion will be granted, and this action will be dismissed.

## I. Background

The following facts are not in dispute.[1] At all times relevant to this suit, plaintiff was an inmate in the custody of the VDOC and housed at Sussex I State Prison ("SISP"), where I. Gilmore served as warden, D. Stephenson and E. Boone served as counselors, J. Adams served as a unit manager, and A. Wethington served as the Americans with Disabilities Act ("ADA") coordinator. Meanwhile, defendant K. Rosch served as the VDOC's "Interstate Compact Coordinator," and C. Gensinger held the role of "Central Classification Supervisor."

This action is predicated in large part upon the alleged misidentification of plaintiff's proper security level. Relevant to this issue, the VDOC's Institutional Classification Authority ("ICA") regularly reviews the history and conduct of VDOC inmates to determine the proper security level an inmate should be assigned. [Dkt. No. 28-2] at 1-2. Reviews can be either formal or informal but are in any event conducted in accordance with VDOC Operating Procedure ("OP") 830.1. Id. at 2. An inmate at risk of removal from general population, of receiving an increased security level, of reduction of good time earning level, or of other loss of liberty must receive a formal hearing, and OP 830.1 requires such an inmate receive notice of his hearing forty-eight hours before it is set to occur. Id. An inmate has the right to be present at his

---

[1] The statement of undisputed facts consists of information gleaned from the exhibits attached to defendants' Motion [Dkt. No. 28-1 through 28-3] as well as those attached to plaintiff's opposition to the Motion [Dkt. No. 33-1 through 33-2]. None of plaintiff's three complaints were verified, and the allegations those complaints contain thus may not be considered at the summary judgment stage. See Huff v. Outlaw, No. 9:09-cv-520, 2010 WL 1433470, at *2 (D.S.C. Apr. 8, 2010) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment."). To the extent the record contains additional admissible evidence the Court has not referred to in the statement of facts, this is of no moment to the outcome of the action, for it is not the Court's duty to scour the record on a party's behalf. See Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

formal hearing and may also have a counselor or other VDOC employee present to advise him. Id. If the ICA concludes that a decrease in security level or transfer to a lower security facility is proper, a request containing that information is transmitted to the Central Classification Section ("CCS") of VDOC for final review and approval. [Dkt. No. 28-1] at 2.

On December 13, 2018, the SISP ICA conducted an annual review of plaintiff's security level. Id. Plaintiff did not request a transfer at that time. Id. The ICA noted that plaintiff had received two institutional disciplinary convictions and had not completed any programs during the relevant review period. Id. Accordingly, the ICA recommended plaintiff be assigned a Security Level of 5. Id. The CCS approved that recommendation on January 9, 2019. Id.

At his next annual review, plaintiff expressed a desire to be closer to his family and thus requested a transfer to Buckingham Correctional Center, Keen Mountain Correctional Center, or River North Correctional Center. Id. The ICA observed that plaintiff had remained infraction free during the review period and initially recommended plaintiff receive a Security Level of 1; however, after review, the recommendation was changed to Security Level 4 based on plaintiff's criminal history and need for a more gradual reduction in security level assignment. Id. The CCS approved the amended recommendation on February 7, 2020, and recommended that plaintiff be transferred to Keen Mountain. Id. at 3. Shortly thereafter, though, the COVID-19 pandemic forced VDOC to suspend all inmate transfers. Id. at 3 n.1.

On May 11, 2020, plaintiff spoke with defendant Rosch over the phone and expressed interest in being transferred to a carceral facility in the state of Maine. [Dkt. No. 28-3] at 2. Rosch explained that plaintiff was not eligible for an interstate transfer due to the fact that he had recently incurred a disciplinary infraction and had family locally within the state of Virginia. Id.

3

Plaintiff had also previously requested a transfer to Maine, but that request was denied due to the fact that he had not raised the issue at his annual review. Id.

Plaintiff underwent another annual review on December 30, 2020. Id. On that occasion, the ICA recommended a reduction of plaintiff's security level to Level 1 and a transfer to Augusta Correctional Center, Buckingham Correctional Center, or Green Rock Correctional Center. Id. On March 4, 2021, though, the ICA noted that it had erred in recommending a Level 1 security assignment and used an "H6 override" to recommend a Level 3 assignment. Put simply, although plaintiff's "score"—a metric based on a number of considerations such as the severity of an inmate's offense and whether he has received any disciplinary convictions—met the requirements for a Level 1 security code, the ICA concluded that plaintiff "needed to establish stable adjustment in a general population and/or at the recommended security level prior to consideration for a lower level." Id.

Amidst these reviews, on February 5, 2019, plaintiff was assigned to the Shared Allied Management ("SAM") pod at SISP. Id. The SAM pod houses inmates who require additional attention due to mental health diagnoses, physical infirmities, or risk of victimization by other inmates. Id. at 3-4. On October 5, 2021, the ICA—finding that plaintiff did not require special medical accommodations—recommended plaintiff be transferred to general population. Id. at 4. Just two weeks later, on October 19, 2021, the ICA reconsidered its decision and recommended plaintiff remain in the SAM pod pending transfer to a Security Level III facility. Id. On November 19, 2021, plaintiff was transferred to Augusta Correctional Center and was assigned to the SAM pod at that facility. Id. at 5.

The events just described occurred during the global COVID-19 pandemic. Due to the pandemic, the VDOC suspended all in-person visitation beginning in March 2020. Id. Although video visitation was available for some inmates, plaintiff was not automatically allowed access to this technology due to his previous commission of a sex offense and resulting sex offender status. Id.; [Dkt. No. 28-3] at 1. Had plaintiff wished to use video visitation, he would have been required to request approval through an "Assisting Families of Inmates" ("AMOI") Video Visitation Center, as is described in VDOC OP 851.1. [Dkt. No. 28-1] at 4. Plaintiff did not submit such a request. Id.

Finally, this action is also predicated in part on plaintiff's alleged denial of an "alert alarm" clock. Plaintiff claims to have submitted a request to receive such an alarm clock on July 26, 2020. On July 27, 2020, prison officials informed plaintiff that the "Virginia Department for the Deaf and Hard of Hearing no longer provided such devices" and instructed that plaintiff "could purchase an alarm clock from the institution's commissary." Id. at 5.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial … by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for

summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. Analysis

The operative complaint lists five claims for relief, but only three of these remain active after the Court's screening—mandated by 28 U.S.C. § 1915A—of that complaint. Before the Court are the following claims:

> 2. In violation of plaintiff's rights under the ADA (specifically 28 C.F.R. §§ 35.130(a), 35.152(b)(2)) and the Fourteenth Amendment, defendants failed to transfer plaintiff from SISP to either a facility in the Maine Department of Corrections or to Augusta Correctional Center. This failure rendered plaintiff unable to participate in visitation.
>
> 3. In violation of plaintiff's rights under the ADA (specifically 28 C.F.R. §§ 35.130(a), 35.152(b)(2)), the Eighth Amendment, and the Fourteenth Amendment, defendants erroneously assigned plaintiff a higher security level than was warranted and thereby kept plaintiff at a more secure prison than was necessary or appropriate under the VDOC's "re-entry program."
>
> 5. In violation of plaintiff's rights under the ADA, defendants failed to provide plaintiff with an "alert alarm clock." Specifically, plaintiff claims that "ADA Coordinator Wethington accepted the order form to purchase the alarm clock rather than allow [plaintiff's] wife to purchase the item off of Amazon.com and have it shipped to the facility for inspection."

[Dkt. No. 14] at 7-9.

#### A. *Claims Against Defendant VDOC and Eleventh Amendment Immunity*

Before assessing the merits of plaintiff's claims, defendants argue for the dismissal of any § 1983 claims raised against defendant VDOC, citing the limited scope of § 1983 and the doctrine of Eleventh Amendment immunity. [Dkt. No. 28] at 8-9. Plaintiff examines the abrogation of the Eleventh Amendment in his opposition, but he focuses his argument on

6

abrogation with respect to the ADA, not constitutional claims raised under § 1983, see [Dkt. No. 33].

Defendants are correct that, to the extent plaintiff seeks to raise any § 1983 claims against the VDOC, those claims must be dismissed, as the VDOC is not a "person" subject to suit under the statute. See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Plaintiff, for his part, is correct that the Eleventh Amendment does not bar ADA claims against the VDOC. See United States v. Georgia, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."); Bane v. Virginia Dept. of Corrs., No. 7:06cv733, 2007 WL 1378523, at *1 n.1 (W.D. Va. May 8, 2007) (stating that the VDOC and a specific prison were "proper defendants under the ADA"). Consistent with this analysis, the VDOC is entitled to judgment in its favor as to any § 1983 claims plaintiff sought to bring against it; however, plaintiff's ADA claims against VDOC must be assessed on the merits.

B.  *Claims 2 and 3*

Claims 2 and 3, which allege violations of plaintiff's rights under the Eighth and Fourteenth Amendments as well as the ADA, are predicated on similar factual bases—namely plaintiff's security level assignment, continued confinement at SISP, and resulting inability to receive visitation—and will thus be assessed together.

The summary judgment record forecloses any potential finding that defendants violated plaintiff's rights under the Eighth Amendment. As relevant, this amendment prohibits the imposition of "cruel and unusual punishments" against prisoners. See U.S. Const. amend. VIII.

A prisoner proves an Eighth Amendment violation by showing that he was deprived of a basic human need and that defendant-officials were deliberately indifferent to that need. See Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). To satisfy the first prong of this test, a plaintiff must show the existence of a "serious or significant physical or emotional injury resulting from the challenged conditions." Id. at 1380. To satisfy the second prong, a plaintiff must show that a defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Here, plaintiff's claims fail at the first hurdle, for there is simply no evidence that plaintiff suffered any "serious or significant physical or emotional injury" by being assigned a particular security level, housed at SISP, and effectively denied visitation. Even if plaintiff had produced such evidence, the conditions plaintiff complains of do not violate the Eighth Amendment as a matter of law. See, e.g., Overton v. Bazzetta, 539 U.S. 126, 136 (2003) (stating that denial of visitation "undoubtedly makes the prisoner's confinement more difficult to bear" but generally "does not [create conditions that] fall below the standards mandated by the Eighth Amendment"); Palacios v. Butcher, No. 3:16cv202, 2018 WL 2388587, at *2 (S.D. Tex. May 25, 2018) ("The denial of visitation privileges does not violate the Eighth Amendment because it does not rise to the level of cruel and unusual punishment."); Birdo v. Dunston, No. 2013 WL 2154819, at * 7 (W.D.N.C. May 17, 2013) (finding that a prisoner-plaintiff "fail[ed] to meet the first prong of the test for cruel and unusual punishment" in that he "[did] not allege a serious injury caused by ... an increase in his security level classification").

Nor does the record support the existence of any viable Fourteenth Amendment claim based on the conditions alleged. The Due Process Clause of the Fourteenth Amendment states

that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. In order to prevail on either a procedural or substantive due process claim, then, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. See Plyler v. Moore, 100 F.3d 365, 374 (4th Cir. 1996).

Here, put simply, plaintiff has not done so and *cannot* do so. First, inmates have "no protected liberty interest ... from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison." Jones v. SCDC, Case No. 5:12cv3554–RBH-KDW, 2013 WL 3880175, *3 (D.S.C. July 26, 2013) (citing Meachum v. Fano, 427 U.S. 215 (1976)). See also Dukes v. Leak, Case No. 0:14-cv-3340-DCN-PJG, 2014 WL 7338959, *3 (D.S.C. Dec. 23, 2014) (holding that an inmate "has no protected liberty interest in his custody or security classification"). Nor do inmates have any liberty interest in visitation while incarcerated. See Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 461 (1989) ("The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause."); Desper v. Clarke, 1 F.4th 236, (4th Cir. 2021) (finding no freestanding liberty interest in visitation nor any state-created interest under VDOC OP 851.1). Because plaintiff has not shown that defendants acted to deprive him of a protected liberty interest, his due process claim fails.

Plaintiff's ADA arguments require marginally more discussion but are also without merit. Plaintiff specifically cites two federal regulations promulgated under the ADA in support of his position: 28 C.F.R. §§ 35.130(a), 35.152(b)(2). Section 35.130(a) states that "[n]o qualified individual with a disability shall, on the basis of disability, be excluded from participation in or

9

be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." See 28 C.F.R. § 35.130(a). Section 35.152(b), meanwhile, explicitly applies to correctional facilities and states that:

> (2) Public entities shall ensure that inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals. Unless it is appropriate to make an exception, a public entity –
>
> (i) Shall not place inmates or detainees with disabilities in inappropriate security classifications because no accessible cells or beds are available;
>
> (ii) Shall not place inmates or detainees with disabilities in designated medical areas unless they are actually receiving medical care or treatment;
>
> (iii) Shall not place inmates or detainees with disabilities in facilities that do not offer the same programs as the facilities where they would otherwise be housed; and
>
> (iv) Shall not deprive inmates or detainees with disabilities of visitation with family members by placing them in distant facilities where they would not otherwise be housed.

See 28 C.F.R. § 35.152(b).

Plaintiff does not identify the specific subsection or subsections of this regulation he believes defendants have violated, but because the complaint does not raise the issues of placement in a "designated medical area" or the availability of specific programs at SISP, the Court infers that plaintiff relies on subsections one and four of 28 C.F.R. § 135.52(b). There is, however, no evidence before the Court that would support an inference defendants violated these provisions. First, the record reflects that plaintiff was rightly assigned a level five security level on December 13, 2018. It also shows that, although the ICA on February 7, 2020 recommended plaintiff's security level be reduced to level four and plaintiff be transferred, plaintiff remained at SISP due to the advent of the COVID-19 pandemic. Plaintiff has not introduced any admissible evidence to suggest that he remained at SISP due to a lack of beds in other facilities or that he

"would not otherwise" have remained at SISP. To the contrary, the record shows that plaintiff's continued placement at SISP occurred for valid, nondiscriminatory reasons.

C.  Claim 5

In Claim 5, plaintiff asserts that defendants violated the ADA[2] by failing to ensure he was provided an "alert alarm clock." [Dkt. No. 14] at 9. Unit Manager Adams, the complaint claims, informed plaintiff that the "Virginia Dept. of Deaf and Hard of Hearing will not provide the devices anymore." Id. ADA Coordinator Wethington then "accepted [an] order form to purchase the alarm clock rather than allow [plaintiff's] wife to purchase the item off Amazon.com and have it shipped to the facility for inspection." Id. At the time of filing of the complaint, plaintiff still had not received the alarm clock. Id.

As previously discussed, Title II of the ADA prohibits a public entity from excluding qualified individuals with disabilities from the benefits of the entity's "services, programs, or activities." 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a). Under Title II's implementing regulations, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of a

---

[2] The Court observes that in his opposition to the Motion, plaintiff states that he "has not received proper accommodations ... as other *similarly situated inmates* housed elsewhere in the Virginia Department of Corrections. [Dkt. No. 33] at 2 (emphasis added). Plaintiff's use of this language indicates that he believes defendants have violated his rights under the Equal Protection Clause of the Fourteenth Amendment. But plaintiff did not raise such a claim in the operative complaint, and he may not raise a new claim such as this in opposition to a motion for summary judgment. See, e.g., Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc., 86 F. Supp. 3d 464, 472 (E.D. Va. 2015) ("[I]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a [dispositive] motion[.]"); Sarno v. Wilson, No. 1:17cv953 (LO/JFA), 2018 WL 3638079, at *3 n.2 (E.D. Va. July 27, 2018) ("[I]t is well accepted that a plaintiff, even one proceeding pro se, cannot amend his complaint by asserting new claims in an opposition brief to a motion for summary judgment.") (citing Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996)).

11

disability." 28 C.F.R. § 35.130(b)(7). To determine whether a public entity has failed to make reasonable modification, a court must assess "whether a plaintiff with disabilities 'as a practical matter' was denied meaningful access' to services, programs or activities to which he or she was 'legally entitled.'" Wright v. N.Y. Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016) (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 273 (2d Cir. 2003)). To provide "meaningful access," an "accommodation [or modification] must overcome structural impediments and non-trivial temporal delays that limit access to programs, services, and activities." Id. at 73.

In line with this legal framework, it is clear that the ADA seeks to ensure disabled individuals receive access to services, programs, or activities enjoyed by others and that the provision of accommodations or modifications is only necessary to the extent it is required to ensure disabled persons have such access. Consequently, the ADA does not require provision of accommodations or modifications that will have no effect on an individual's ability to participate in services, programs, or activities offered by a public entity.

Assessed under this standard, the record before the Court indicates that defendants are owed judgment in their favor. Indeed, plaintiff has not identified any record evidence showing that he was denied reasonable access to any of the services, programs, or activities offered at SISP.[3] Consequently, he has not identified any need for a reasonable accommodation—be it by

---

[3] In his opposition to the Motion, plaintiff submitted a Memorandum issued by I.T. Gilmore, the Warden of SISP. [Dkt. No. 33] at 28. The document states that inmates who "fail[] to follow count procedures by refusing to stand for count during the required count times of 6:00am, 1:00pm, 6:00pm, and 9:30pm ... forfeit[] [their] in-pod activities for 24 hours." [Dkt. No. 33] at 28. To the extent there were evidence that plaintiff was somehow unable to abide by this requirement without the alarm clock he requested, plaintiff would potentially possess a viable ADA claim; however, the document plaintiff provided is not itself evidence that plaintiff was unable to abide by Gilmore's requirements, and plaintiff has not otherwise identified any evidence which would allow for such a finding.

provision of an alarm clock or otherwise—and defendants thus cannot be held liable for their failure to provide such an accommodation.

D. *Conduct Occurring at Augusta Correctional Center*

Defendants devote a small portion of their Motion to addressing the conditions plaintiff has or may still be facing at Augusta Correctional Center following his transfer there from SISP. But no conduct of individuals working at Augusta Correctional Center is at issue in this action as the operative complaint does not raise any allegations regarding activity occurring outside of the time plaintiff was incarcerated at SISP. Consequently, plaintiff is not at this juncture entitled to any relief on the basis of actions occurring at ACC. Cf. Stedman v. White, No. L-10-2122, 2011 WL 2746730, at *3 n.2 (D. Md. July 11, 2011) ("These claims are not properly before the Court as they were not raised in his Complaint. If Plaintiff believes his constitutional rights were violated he is free to file a new civil rights complaint detailing these allegations and naming proper parties."). If plaintiff wishes to initiate a new civil action based on the alleged acts or omissions of officials at Augusta Correctional Center, he must do so in the United States District Court for the Western District of Virginia, as Augusta Correctional Center is located with that court's jurisdiction. See 28 U.S.C. § 127(b).

## IV. Conclusion

For the reasons stated above, defendants' Motion for Summary Judgment will be granted through an order that will accompany this Memorandum Opinion.

Entered this 13th day of June 2022.

Alexandria, Virginia

Claude M. Hilton
United States District Judge

13